# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | HON. PATTY SHWARTZ |
| | : | |
| v. | : | Magistrate No. 11-3197 |
| | : | |
| C. TATE GEORGE | : | COMPLAINT |

I, Gregory Yankow, being duly sworn, state the following is true and correct to the best of my knowledge and belief. From in or about 2005 through in or about March 2011, in the District of New Jersey and elsewhere, the defendant C. TATE GEORGE did:

SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

_____
Gregory Yankow, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

September 21, 2011                at        Newark, New Jersey
Date                                         City and State

HONORABLE PATTY SHWARTZ
United States Magistrate Judge                  _____
Name & Title of Judicial Officer                Signature of Judicial Officer

## ATTACHMENT A

From in or about 2005 through in or about March 2011, in the District of New Jersey and elsewhere, the defendant

## C. TATE GEORGE

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations, and promises, and, in furtherance of that scheme, did knowingly cause to be transmitted in interstate commerce writings, signs, signals, and sounds, as described in paragraph 16 below.

In violation of Title 18, United States Code, Section 1343, and Title 18, United States Code, Section 2.

## ATTACHMENT B

I, Gregory Yankow, have been a Special Agent of the Federal Bureau of Investigation ("FBI") for approximately nine years, and I have been personally involved in the investigation of this matter. The information contained in this Complaint is based upon my personal knowledge, as well as information obtained from other sources, including: a) statements made or reported by various witnesses with knowledge of relevant facts; b) my review of publicly available information relating to C. TATE GEORGE, the defendant; and c) my review of business records, bank records and other documents. Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include every fact that I have learned during the course of the investigation. Where the content of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### The Scheme to Defraud

1. C. Tate George is a former professional basketball player who played in the NBA for the New Jersey Nets and Milwaukee Bucks. From in or about 2005 through in or about March 2011, defendant C. TATE GEORGE raised more than $2 million from numerous investors, including several former professional athletes, purportedly to finance The George Group, his supposed real estate development business. In fact, defendant C. TATE GEORGE and The George Group had virtually no business during this time. Defendant C. TATE GEORGE instead used new investor money (1) to fund principal and interest payments to existing investors, in Ponzi-scheme fashion, and (2) to fund personal expenses.

### The George Group

2. At all times relevant to this Complaint, C. TATE GEORGE was the owner and Chief Executive Officer of The George Group, a Connecticut corporation with offices in Newark, New Jersey.

3. At times relevant to this Complaint, defendant C. TATE GEORGE, through The George Group, purported to be operating a real estate development business in which he claimed to purchase and develop real estate for a profit.

4. Purportedly to fund the purchase of various properties for development, defendant C. TATE GEORGE solicited investors to invest their money in The George Group. Defendant C. TATE GEORGE, in both oral representations and written materials, told investors that their money would be used to fund The George Group's purchase and development of specific real estate projects.

5. To induce potential investors to invest their money, defendant C. TATE GEORGE directed investors to the website for The George Group, which contained numerous fraudulent misrepresentations concerning The George Group and its supposed real estate development projects. Among other fraudulent misrepresentations, the website for The George

Group falsely stated that the company had a real estate development portfolio worth in excess of $500 million.

6. In most instances, defendant C. TATE GEORGE provided investors with promissory notes that reflected the amount of their investment and a schedule, which varied from a matter of days to up to one year, for the payment of interest and the return of investors' principal.

7. In some instances, defendant C. TATE GEORGE represented to investors that their investment funds would be maintained in an attorney escrow account.

8. Based on these representations, investors sent defendant C. TATE GEORGE money, which was deposited into The George Group's bank accounts and into defendant C. TATE GEORGE's personal bank accounts.

9. During the time period relevant to this Complaint, The George Group and defendant C. TATE GEORGE raised more than $2 million from investors in New Jersey and throughout the United States.

**Materially False and Misleading Statements**

10. Witnesses and documents obtained in connection with this investigation have revealed that during the time period relevant to this Complaint, defendant C. TATE GEORGE made numerous materially false and misleading statements to investors concerning The George Group's use of investors' monies.

11. Contrary to defendant C. TATE GEORGE's oral and written representations, the investigation has revealed that defendant C. TATE GEORGE did not use investor money to fund The George Group's real estate development business, as promised. Indeed, bank records and witnesses reveal that defendant C. TATE GEORGE and The George Group had virtually no income-generating operations at all.

12. Instead of using investor money to fund real estate development projects, defendant C. TATE GEORGE, in order to perpetuate the fraudulent scheme, used new investor money to make principal and interest payments to existing investors.

**Misappropriation of Investor Funds**

13. Furthermore, during the scheme, defendant C. TATE GEORGE misappropriated investors' monies for his personal use. Among other things, defendant C. TATE GEORGE used a portion of investors' monies to fund home improvement projects on his personal residence and to pay his day-to-day living expenses, such as meals at restaurants, clothing, and gas.

**Wire Fraud**

14. In or about 2007, defendant C. TATE GEORGE solicited an investor with the initials B.K., to invest in The George Group. Defendant C. TATE GEORGE told B.K. that the money would be used to fund a real estate development project in East Orange, New Jersey.

15. In or about June 2007, defendant C. TATE GEORGE executed a promissory note in which he promised to return B.K.'s principal investment and pay B.K. $18,000 in interest no later than on or about January 3, 2008. The promissory note was personally guaranteed by defendant C. TATE GEORGE.

16. On or about July 2, 2007, B.K. sent approximately $300,000 to defendant C. TATE GEORGE by causing a wire transfer from B.K.'s bank account to a bank account in Connecticut held in the name of an attorney affiliated with The George Group. The next day, on or about July 3, 2007, the entire $300,000 was wired from the attorney's bank account to a bank account held in the name of The George Group. Defendant C. TATE GEORGE then wired approximately $6,000 of this amount to a bank account in New Jersey held in the name of M.B., an associate of defendant C. TATE GEORGE who had helped defendant GEORGE to solicit B.K. as an investor.

17. Contrary to his representations to B.K., defendant C. TATE GEORGE did not use B.K.'s money to fund any real estate venture. Instead, bank records reveal that defendant C. TATE GEORGE used most of these funds (1) to make principal and interest payments to other investors, and (2) to pay personal expenses, including mortgage payments on his personal property and child support payments to his former spouse.

18. On or about March 10, 2011, defendant C. TATE GEORGE was questioned, under oath, concerning his use of B.K.'s $300,000 investment money. Defendant C. TATE GEORGE falsely testified that he had spent the entirety of B.K.'s $300,000 on the purported real estate development project in East Orange, New Jersey.